UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CECIL OSAKWE, <br> (A#76-826-718), <br><br> *Plaintiff*, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, *et al.* <br><br> *Defendants*. | § § § § § § § § § § § | CIVIL ACTION G-07-00308 |

**MEMORANDUM OPINION & ORDER**

The plaintiff, Cecil Osakwe (A#76-826-718), has filed a complaint seeking a writ of mandamus to compel action on a pending application for citizenship through naturalization. Osakwe has also filed a first amended version of his complaint. After a review of the plaintiff's amended complaint and the applicable law, the court determines that this case should be DISMISSED for the reasons set forth below.

**I. BACKGROUND**

Osakwe is a 39-year old lawful permanent resident of the United States. The defendants in this case are Department of Homeland Security ("DHS") Secretary Michael Chertoff; United States Citizenship and Immigration Services ("CIS") Director Dr. Emilio Gonzalez; Federal Bureau of Investigation ("FBI") Director Robert S. Mueller; and the Director of the Houston CIS District Office, Sharon A. Hudson. All of the defendants are Executive Branch officials, specifically with the Departments of Justice and Homeland Security.

The dispute in this case involves a delay in the adjudication of an application for United States citizenship through naturalization. Osakwe reports that, since 1999, he has been a lawful

permanent resident of the United States. Osakwe filed a Form N-400 "Application for Naturalization" with CIS in June 2004, seeking United States citizenship. On October 12, 2004, an immigration official interviewed Osakwe as part of the naturalization application process. At the interview, Osakwe passed the requisite written proficiency tests on the English language, United States history, and United States government. A decision whether to recommend approval of Osakwe's application for naturalization could not be made at that time, however, because the FBI had not yet completed the mandatory national security background check, commonly referred to as the "FBI name check."

After waiting more than two years for the FBI to complete the requisite name check, Osakwe filed this action for a writ of mandamus. Osakwe insists that he meets all the criteria for naturalization and he asks this court to either assume jurisdiction over the case and adjudicate his application for citizenship under 8 U.S.C. § 1447(b) or issue a writ of mandamus to compel the defendants to do so. Alleging that the defendants have unreasonably delayed adjudicating his application, Osakwe also invokes the federal mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). The court concludes, however, that this case must be dismissed for the reasons discussed further below.

### III. Discussion

Noting that his FBI name check has been pending for more than two years, plaintiff argues that this court has jurisdiction to determine his naturalization application or to issue a writ of mandamus to compel administrative action. Obtaining United States citizenship through naturalization is an administrative process that is heavily regulated by Congress and entrusted to CIS. Under the applicable provisions of the Immigration and Nationality Act ("INA") and the governing

2

regulations, the general requirements for obtaining citizenship through naturalization specify that "[n]o person . . . shall be naturalized" unless such applicant:

(1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . .;

(2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and

(3) during all the periods referred to in this subsection has been and still is a person of good moral character. . . .

8 U.S.C. § 1427(a). Subject to certain exceptions,[1] an applicant must demonstrate an understanding of the English language, including the ability to read, write, and speak words in ordinary usage. 8 U.S.C. § 1423(a)(1). An applicant must also demonstrate a knowledge and understanding of the fundamentals of history, and of the principles and form of the United States government. 8 U.S.C. § 1423(a)(2). Congress has also mandated background checks of each applicant for national security reasons. *See* Department of Justice Appropriations Act of 1998, Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448, set forth in the historical and statutory notes to 8 U.S.C. § 1446.

In light of these criteria, regulations governing naturalization establish several steps for an applicant seeking citizenship through this process. An applicant for citizenship through naturalization must first submit a completed Form N-400 "Application for Naturalization" to CIS. *See* 8 C.F.R. § 334.2 (2006). Once an application for naturalization is filed, CIS "shall conduct an investigation of the applicant." 8 C.F.R. § 335.1. Once an investigation is completed, each applicant

---

[1] The English language requirements do not apply, for example, to persons who are over a certain age and have lived in the United States for a lengthy period of time subsequent to obtaining lawful permanent resident status. 8 U.S.C. § 1423(b)(2).

shall appear in person before a CIS officer designated to conduct an initial examination encompassing all factors relating to the applicant's eligibility for naturalization. 8 C.F.R. § 335.2(b). This initial examination includes, *inter alia*, tests administered to the applicant on English literacy and basic knowledge of the history and government of the United States. 8 C.F.R. § 335.2(c). Such an examination, however, is evidently intended to take place "only after" CIS has received "a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been *completed*." 8 C.F.R. § 335.2(b) (emphasis added). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination of the applicant for naturalization under § 335.2." 8 C.F.R. § 335.3(a).

The plaintiff notes that he was interviewed by immigration officials on October 12, 2004. Because more than 120 days have passed since his interview, the plaintiff asks this court to adjudicate his pending application for naturalization pursuant to 8 U.S.C. § 1447(b), which provides jurisdiction when immigration officials have delayed making a determination more than 120 days past the date of the "examination":

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). Contrary to the plaintiff's assertion, however, the Fifth Circuit has recently held that the 120-day period referenced in § 1447(b) does not begin until after CIS has received a "definitive response" from the FBI on the applicant's name check. *Walji v. Gonzales*, — F.3d —, —, 2007 WL 1747911 (5th Cir. June 19, 2007) (citing 8 C.F.R. § 335.2(b)). Because the plaintiff

4

concedes that his name check investigation has not been completed, the 120-day period found in 8 U.S.C. § 1447(b) has not been triggered, and this court lacks jurisdiction to consider his naturalization application under this statute.

Arguing that the length of delay in his case is unreasonable, the plaintiff also seeks relief in the form of a writ of mandamus under 28 U.S.C. § 1361 and the Administrative Procedure Act, 5 U.S.C. § 706(1), to compel the defendants to act on his pending application. However, in this case there is no factually supported allegation that officials have neglected the application or refused to complete the background check in bad faith.[2] *See Walji*, 2007 WL 1747911 (5th Cir. June 19, 2007) ("Government delay alone, unless it is *shown* to be in bad faith or extraordinary, does not warrant such an extraordinary remedy." (emphasis added)); *see also Yan v. Mueller*, — F. Supp. 2d —, 2007 WL 1521732 (S.D. Tex. May 24, 2007) (Atlas, J.) (dismissing a petition for a writ of mandamus under 28 U.S.C. § 1361 and the Administrative Procedure Act, 5 U.S.C. § 706(1), in a delayed FBI name check case). Accordingly, the complaint in this case must be dismissed.

---

[2] The court has not overlooked the fact that plaintiff alleges in his amended complaint that the defendants' "delay in processing the naturalization application is in bad faith and extraordinary." *See* Dkt. 2 at 4. Nevertheless, while this assertion may have satisfied the liberal pleading standard announced in *Conley v. Gibson*, 335 U.S. 41 (1957), the Supreme Court recently endorsed new, more stringent pleading requirements under Federal Rule of Civil Procedure 8(a)(2). *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007). According to the Court's clarified test, a complainant need not plead "detailed factual allegations," but the factual allegations plaintiff does include "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. As the Court observed, Rule 8(a)(2) requires a "showing" that the pleader is entitled to relief, a substantive threshold not achieved by conclusory assertions. *Id.* at 1965 n.3.

In this case the plaintiff has not alleged any conduct supporting its contention that the Government's actions could plausibly be considered to be "in bad faith and extraordinary." Dkt. 2 at 4. Thus, despite the plaintiff's attempt to state a cognizable claim for mandamus relief, the court holds that the plaintiff has not "nudged [its] claims across the line from conceivable to plausible," and its claims for extraordinary relief must be dismissed. *See Twombly*, 127 S. Ct. at 1974.

In the alternative, the court holds that it lacks jurisdiction to consider the discretionary conduct of the Attorney General and the Secretary of Homeland Security under the applicable provisions of the Immigration and Nationality Act ("INA"). In recent years, Congress has severely limited the power of the federal judiciary to review the actions and decisions relating to immigration made by the Departments of Justice, Homeland Security, and their respective subdivisions. Specifically, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, the Intelligence Reform and Terrorism Prevention Act ("IRTPA") in 2004, and the REAL ID Act in 2005. These acts amended the jurisdictional power of this court by altering INA § 242 to provide as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including . . . section[] 1361 of [] title [28] [the federal mandamus statute] . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-
>
> > (I) any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . .or
> >
> > (ii) *any other decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . .

8 U.S.C. § 1252(a)(2)(B) (emphasis added). As other courts have recognized, this statute's meaning is clear and unambiguous: District courts are prohibited from reviewing *any* discretionary decision or action by CIS. *See, e.g.*, *El-Khader v. Perryman*, 264 F. Supp. 2d 645, 659 (N.D. Ill. 2003), *aff'd sub nom. El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004). Specifically, subsection (I) excludes from judicial review any judgment regarding whether to grant or deny adjustment of status, and subsection (ii) excludes from judicial review any other decision or action specified to be within CIS's discretion. It is undisputed that the adjustment of status application process falls squarely

within subsection (ii), as § 1255(a) specifically provides that CIS has the discretion to adjust an alien's status, under such regulations as it "*may prescribe*." 8 U.S.C. § 1255(a). Pursuant to this discretionary authority, CIS has promulgated regulations regarding the adjudication process, including the performance of background and security checks. *See* 8 C.F.R. part 25. The crux of the debate, then, in interpreting § 1252(a)(2)(B) centers around what exactly constitutes an unreviewable discretionary "action": Is it simply the action of entering a judgment in the adjustment process, or does it encompass a broader set of conduct including the entire pace of adjudicating an adjustment of status application?

After considering Congress's entire statutory scheme, the court holds that the correct reading must logically be the latter possibility. The contrary position, that an action is simply the entering of a judgment, disregards the plain meaning of the term "action" and does violence to the natural reading of the statutory language as a whole. First, according to Black's Law Dictionary, the term "action" means "an act or series of acts." BLACK'S LAW DICTIONARY 28 (6th ed. 1990). And, as § 1255(a) does not impose any limits on CIS's discretionary authority over any of the "acts or series of acts" within the adjustment of status process, it is clear that "action" within § 1252(a)(2)(B)(ii) encompasses the entire process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds.

Second, were the term "action" limited to the result of the review process, i.e. the final "judgment" by CIS, then the statute as a whole would make no sense and subsection (ii) would be rendered meaningless. As stated above, Congress has precluded the review of *both* the judgment regarding an adjustment of status application, under subsection (I), *and* any "decision or action" committed to the discretion of the Attorney General of Secretary of DHS, under subsection (ii). *See*

7

8 U.S.C. § 1252(a)(2)(B). As the court must endeavor to give effect to every term within a statute, Congress's use of the term "action" in § 242 of the INA must include the entire process of adjustment application adjudication. This interpretation avoids the conflation of the separate statutory terms "action" and "judgment," a result this court must seek to avoid. *See United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct. 513 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute"). Accordingly, the pace of adjudication is within the discretion of the CIS, and this court lacks jurisdiction to review that process through the vehicle of a petition for a writ of mandamus, as specified in 8 U.S.C. § 1252(a)(2)(B). Similarly, plaintiff's reliance on the APA to furnish subject-matter jurisdiction fails because judicial review is unavailable where, as here, the action challenged is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). For all of these additional reasons, the plaintiff's request for extraordinary relief must be denied for want of subject-matter jurisdiction.

### IV. CONCLUSION

The court stresses that the dismissal of this complaint is required by its constitutional duty to police its own jurisdiction and is not intended to diminish the obvious hardships suffered by the plaintiff as a result of the CIS's manifold delays in processing adjustment applications. Without a doubt, the current length of the process promotes frustration by all those affected as they patiently wait for a judgment–any judgment–to be issued by the CIS. However, "[o]ur national security requires that caution and thoroughness in these matters not be sacrificed for the purpose of expediency." *See Safadi v. Howard*, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Congress justifiably gave security concerns precedence over an accelerated decisionmaking process when it immunized that process from judicial review. Indeed, Congress intended to shift challenges like the case at bar

away from the judiciary and toward the elected branches of government which have "the responsibility for regulating the relationship between the United States and our alien visitors." *Mathews v. Diaz*, 426 U.S. 67, 81, 96 S. Ct. 1883 (1976). This court must comply with Congress's directive about the extent, and limits, of its jurisdiction over the adjustment of status process and decline to exercise any jurisdiction it does not possess.

In conclusion, for the reasons stated by the Fifth Circuit in *Walji v. Gonzales*, 2007 WL 1747911 (5th Cir. June 19, 2007), and because Congress has stripped this court of jurisdiction to review the pace of the adjustment adjudication process under 8 U.S.C. § 1252(a)(2)(B), this action is DISMISSED for want of subject-matter jurisdiction. Alternatively, the case is DISMISSED for failure to state a claim upon which relief can be granted.

Signed at Houston, Texas on June 29, 2007.

_____
Gray H. Miller
United States District Judge